UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 4:16 CR 022 HEA (PLC) |
| | ) | |
| SAID ALI, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES OF AMERICA'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

COMES NOW, the United States of America, by and through Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Sayler A. Fleming, Assistant United States Attorney for said District, and for its Response to Defendant's Motion to Suppress Evidence (Doc. # 30), states as follows:

**I.   INTRODUCTION**

On January 20, 2016, a Federal Grand Jury returned an indictment charging defendant Said Ali ("Defendant") with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  Doc. # 2.  On March 23, 2016, Defendant filed with the Court a Motion to Suppress Evidence.  Doc. # 30.  In his motion, Defendant urges the Court to suppress the firearm seized during a consent search of his mother's residence on November 18, 2015. Defendant maintains that the firearm was seized prior to officers receiving any consent to search and, thus, in violation of his Fourth Amendment rights.

Contrary to Defendant's assertion, officers received both verbal consent from Defendant, as well as written consent from Defendant's mother and wife, prior to searching the Defendant's

bedroom and seizing the firearm from within.  Accordingly, Defendant's motion should be denied.

## II.   STATEMENT OF FACTS[1]

On November 18, 2015, Florissant Police Department ("FPD") officers received information from a reliable confidential informant ("CI") that Defendant, who was wanted for questioning related to a burglary in Montgomery County during which numerous firearms were stolen, resided at 1140 Carmona Drive, Florissant, within the Eastern District of Missouri (the "Residence").  The CI further advised that Defendant likely resided there with his mother.  Prior to responding to the Residence, officers familiarized themselves with Defendant's photograph and criminal history.[2]  Officers also learned that Defendant's mother Edna Wright was the renter and lone occupant of the Residence according to the occupancy permit.

Thereafter, officers responded to the Residence and knocked on the front door. Defendant answered the door.  Officers advised Defendant that he was being placed under arrest on an active wanted through the Montgomery County Sheriff's Department. Defendant was placed in handcuffs and advised of his *Miranda* rights which he indicated he understood. Defendant advised officers that he wished to cooperate with their investigation.  When asked if he had any weapons, Defendant responded, "I'm holding something for a friend."  Defendant further explained, "I got a rifle under me and my wife's bed that my friend asked me to hold for him."  Defendant then pointed in the direction of their bedroom and stated, "You can go grab it if

---

[1] This Response merely is an outline of the United States' evidence to be presented at the hearing on Defendant's motion and should not be deemed a Bill of Particulars binding the United States to a fixed theory of proof.

[2] Officers learned that Defendant was a convicted felon and currently on probation/parole for possession of a controlled substance.  A "caution code" also was attached to Defendant's name, advising officers that Defendant is known to be armed and dangerous.

you want." Officers then took Defendant into the basement to retrieve his shoes before escorting him out of the Residence and conveying him to the Florissant Police Department.

Officers then advised Ms. Wright and Ms. El Housni, who were in the kitchen of the Residence, of their investigation and asked if they would consent to a search of the Residence for weapons. Both consented in writing to a search of the Residence.[3]

After receiving consent to search the Residence, officers then retrieved the Remington make, Model 700, .270 Winchester caliber rifle from under the bed in Defendant's bedroom. A computer inquiry of the rifle revealed it had been reported stolen in the aforementioned Montgomery City burglary.

Officers then responded to the Florissant Police Department where Mr. Ali had been placed in an interview room. In a post-*Miranda* interview and in a written statement at the station, Defendant stated that approximately three weeks prior to the search his friend "Monty" stopped by with numerous items in the back of his truck, including at least five hunting rifles. According to Defendant, "Monty" stated that the items came from his mother's residence and asked Defendant if he would hold one of them. Defendant stated that he took the firearm to protect his family. After being transferred to the custody of the Montgomery County Sheriff's Department the following day, Defendant also admitted in a post-*Miranda* video-recorded interview to possessing the firearm.

### III.   ARGUMENT

The firearm seized from the Residence should not be suppressed because Defendant provided knowing and voluntary consent prior to the officers' search and seizure of it. Though

---

[3] Copies of Ms. Wright's and Ms. El Housni's written consent to search forms are attached hereto and incorporated herein as Government's Exhibits 1 and 2, respectively.

unnecessary, the officers also obtained written consent from the owner and other occupant of the Residence.  Accordingly, Defendant's motion should be denied.

"The Fourth Amendment protects individuals against unreasonable searches and seizures by the government." *United States v. Williams*, 521 F.3d 902, 905 (8th Cir. 2008) (citing *Minnesota v. Carter,* 525 U.S. 83, 88 (1998)).  A voluntary consent to search is an exception to the Fourth Amendment's warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041 (1978).  Where one voluntarily consents to a search, law enforcement needs neither a warrant nor probable cause to legally execute the search. *United States v. Matlock*, 415 U.S. 164, 165-66, 94 S.Ct. 988 (1974).  When an individual later claims that the consent was involuntary, it is the United States' "burden to prove by a preponderance of the evidence that consent to search was freely given, but awareness of the right to refuse is not necessary for consent to be voluntary." *Schneckloth*, 412 U.S. at 227.  "The precise question is not whether [a person] consented subjectively, but whether [their] conduct would have caused a reasonable person to believe that [they] had consented." *United States v. Jones*, 254 F.3d 692, 695 (8th Cir. 2001); *see also United States v. Hampton*, 260 F.3d 832, 835 (8th Cir. 2001) (consent found where individual opened the door and allowed police to enter).

In analyzing the voluntariness of the consent, the Court should consider both (1) the characteristics of the person giving the consent, and (2) the details of the environment in which the consent was given. *United States v. Smith*, 260 F.3d 922, 924 (8th Cir. 2001) (applying factors set forth in *United States v. Chaidez*, 906 F.2d 377, 381 (8th Cir. 1990)).  With respect to the first factor, the following characteristics are relevant to the issue of voluntariness: age; general intelligence and education; whether the individual was under the influence of drugs or alcohol; whether he or she was informed of the *Miranda* rights; and whether he or she had

experienced prior arrests and was, thus, aware of the protections the legal system affords suspected criminals.  *Smith*, 260 F.3d at 924.  Among the factors to be considered in examining the environment surrounding the consent, courts examine:  the length of time a person is detained and questioned; whether the person was threatened, physically intimidated, or punished by the police; whether the defendant relied upon promises or misrepresentations made by the police; whether the defendant was in custody; whether the consent occurred in a public or secluded location; and whether the defendant objected to the search or stood silently by while the search occurred.  *Id.*  "The factors should not be applied mechanically, and no single factor is dispositive or controlling."  *United States v. Bradley*, 234 F.3d 363, 366 (8th Cir. 2000) (internal citation omitted).

Valid consent to search may be given by a party "who possessed a common authority over or other significant relationship to the premises or effects sought to be inspected."  *United States v. Matlock*, 415 U.S. 164, 171 (1974).  The absence of any legal ownership interest in the premises is not controlling.  In general, any person who has a reasonable expectation of privacy in the place to be searched, any person with common authority over the premises or other sufficient relationship to the place or the effects being searched, can give valid consent.  *Id.*

Here, the Court need not address the mother's and wife's written consent to search, as officers were reasonable in believing that Defendant knowingly and voluntarily consented to a search of his bedroom for the firearm.  In fact, at the outset of his interaction with officers, Defendant not only indicated his willingness to cooperate with their investigation, but also offered the officers the opportunity to retrieve the firearm without being asked.[4]  Nevertheless, at

---

[4] Obviously, the United States disagrees with the Defendant's allegation that the officers searched the Residence prior to receiving verbal consent from the Defendant and written consent from the Defendant's mother and wife.

the time, Defendant was 48 years old and did not appear to be under the influence of any drugs or alcohol. The written statement by and recorded interview of Defendant is evidence of not only his continued desire to cooperate, but also his (at the very least) average intelligence and education.[5] Furthermore, Defendant, who has a familiarity with the criminal legal system due to his prior convictions and significant arrest history, was advised of his *Miranda* rights prior to volunteering consent to search.

While Defendant had just been detained at the time he consented to the search, none of the officers displayed their firearms at him or made him any threats or promises. Contrary to Defendant's assertion, at no point did officers "threaten" to obtain a search warrant for the Residence. Indeed, such a "threat" was unnecessary, as Defendant was cooperating with the officers. Nonetheless, even if they had, the Eighth Circuit has generally held that consent given in response to a threat to apply for a search warrant is voluntary. *United States v. Raines,* 536 F.2d 796, 801 (8th Cir. 1976); *see also United States v. Kopf,* 210 WL 2545350, *4 (E.D. Mo. May 27, 2010) (holding that officers telling defendant that they would apply for a warrant if they refused consent was "well within the parameters of Eighth Circuit holdings concerning the voluntariness of consent"). Obviously, where an individual declines to give consent to search, law enforcement officers are entitled, and often obligated, to obtain a search warrant. Thus, even if one of the officers indicated that they would obtain a search warrant absent consent, such a statement would have been an accurate statement of the circumstances and would not constitute a threat or intimidation on their part. However, as discussed above, the Defendant did not object in any manner to the search being conducted and such a "threat" was not made by the officers.

In addition, though unnecessary, officers also obtained written consent to search from

---

[5] Copies of Defendant's Waiver of Rights Form and Voluntary Statement are attached hereto and incorporated herein as Government's Exhibits 3 and 4, respectively.

Defendant's mother and wife, both of whom also resided in the Residence, prior to searching the Defendant's bedroom and retrieving the firearm.  Other than alleging that such written consent occurred after the officers' search of the bedroom, Defendant does not argue that his mother and wife consented unknowingly or involuntarily.  At the time, Ms. Wright was 65 years old, and Ms. El Housni was 33 years old.  Neither Ms. Wright nor Ms. El Housni appeared to be under the influence of any drugs or alcohol.  They appeared to be of at least general intelligence and education and were not arrested or otherwise detained at any time. Officers did not make any threats or promises to obtain their consent, and neither Ms. Wright nor Ms. El Housni objected to the search at any time.   Accordingly, the Defendant's motion should be denied.[6]

## IV.  CONCLUSION

For the foregoing reasons, the United States of America respectfully requests that this Court deny the Defendant's Motions to Suppress Evidence.

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney


 /s/ Sayler A. Fleming
SAYLER A. FLEMING, #58775MO
Assistant United States Attorney
111 S. 10th Street, 20th Floor
St. Louis, Missouri   63102
(314) 539-2200
sayler.fleming@usdoj.gov

---

[6] Defendant does not appear to challenge his verbal or written statements or the subsequent video-recorded statement.  To the extent he raises such issues at the evidentiary hearing, each statement was made after Defendant was properly advised of and voluntarily waived his *Miranda* rights.

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 29, 2016, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

      All Attorneys of Record for Defendant.

      /s/ Sayler A. Fleming
SAYLER A. FLEMING, #58775MO
Assistant United States Attorney